UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEBRA A. WEBER, on behalf of herself and
all others similarly situated,

                              Plaintiff,

v.                                                              5:07-CV-0535
                                                                (GTS/ATB)
ALIGN TECHNOLOGY, INC.; ORTHOCLEAR,
INC.; and ORTHOCLEAR HOLDINGS, INC.,
d/b/a, ORTHOCLEAR, INC.,

                              Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

HANCOCK & ESTABROOK, LLP                DANIEL B. BERMAN, ESQ.
  Counsel for Plaintiff                           MARK J. SCHULTE, ESQ.
1500 AXA Tower I                                  MAUREEN E. MANEY, ESQ.
Syracuse, NY 13221                              ZACHARY M. MATTISON, ESQ.

BOND, SCHOENECK & KING, PLLC          EDWARD R. CONAN, ESQ.
  Counsel for Defendants OrthoClear, Inc.
  and OrthoClear Holdings, Inc.
One Lincoln Center
Syracuse, NY 13202-1355

MENTER RUDIN & TRIVELPIECE, P.C.      MITCHELL J. KATZ, ESQ.
  Counsel for Defendant Align Technology, Inc.   STEVEN B. ALDERMAN, ESQ.
308 Maltbie Street, Suite 200
Syracuse, NY 13204-1498

PAUL, HASTINGS, JANOFSKY & WALKER, LLP    GEORGE L. GRAFF, ESQ.
  Counsel for Defendant Align Technology, Inc.    THOMAS A. COUNST, ESQ.
New York Office                                  T. LEE KISSMAN, ESQ.
75 East 55th Street
New York, NY 10022-3205

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM DECISION and ORDER

Currently before the Court in this breach-of-contract action filed by Debra A. Weber ("Plaintiff") on behalf of herself and all others similarly situated are the following motions: (1) a motion to certify the class filed by Plaintiff (Dkt. No. 26); (2) a motion for partial summary judgment filed by Align Technology, Inc. ("Defendant Align") (Dkt. No. 21); and (3) a motion to dismiss for failure to state a claim filed by Defendant OrthoClear Inc. ("OrthoClear") (Dkt. No. 55).[1]  For the reasons set forth below, the Court denies Plaintiff's motion to certify the class without prejudice and with leave to renew upon the completion of further discovery regarding the issue of certification; the Court grants Defendant Align's motion for partial summary judgment; and the Court denies Defendant OrthoClear's motion to dismiss for failure to state a claim.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

Construed with the utmost of liberality, Plaintiff's Amended Complaint asserts the following three causes of action against Defendant OrthoClear (and Holdings), and/or Defendant Align (collectively "Defendants") arising from an interruption in her orthodontic treatment by use of clear, removable appliances: (1) a cause of action for breach of contract against Defendant OrthoClear; (2) a cause of action for breach of third-party contract against Defendant

---

[1]      On October 16, 2007, Defendant OrthoClear filed a motion to dismiss Plaintiff's Complaint for failure to state a claim.  (Dkt. No. 45.)  On November 5, 2007, Plaintiff filed an Amended Complaint.  (Dkt. No. 46.)  On November 9, 2007, Defendant OrthoClear and Defendant Holdings filed a Status Report acknowledging that Plaintiff's Amended Complaint moots their motions to dismiss for lack of personal jurisdiction and failure to state a claim.  (Dkt. No. 52.)  On November 13, 2007, Judge Mordue issued an Order denying as moot these previous motions.  (Dkt. No. 53.)

OrthoClear; (3) a cause of action for breach of third-party contract against Defendant Align; and (4) two causes of action for fraudulent conveyance against Defendant OrthoClear.  (*See generally* Dkt. No. 46 [Plf.'s Am. Compl.].)  Familiarity with the particular factual allegations supporting these causes of action in Plaintiff's Amended Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.

     **B.**    **Undisputed Material Facts**

Generally, the undisputed material facts of this case are as follows.[2]

Before October 12, 2006, Defendants were competing manufacturers of clear, removable orthodontic appliances.  On October 12, 2006, Defendants, among other parties, entered into a global Settlement Agreement and Mutual Releases ("Settlement Agreement").  Paragraph 4(c) of the Settlement Agreement provides that "Align will make treatment using removable dental aligners available for all OrthoClear patient cases existing as of September 27, 2006 in the United States, Canada, and Hong Kong, at no charge from Align to the patient, the doctor, or OrthoClear."  Other than Paragraph 4, the Settlement Agreement contains no other provisions that purport to provide any benefits to Defendant OrthoClear's patients.  In addition, Paragraph 9 of the Settlement Agreement provides that it "constitute[s] the entire agreement between the Parties with respect to the subject matter hereof, and cancel[s] and supercede[s] all prior and contemporaneous agreements, understandings, negotiations and discussions of the Parties[.]"

On or about October 28, 2006, Defendant Align launched the "Patients First Program," pursuant to which an alternative orthodontic treatment program involving removable

---

[2]    (*Compare* Dkt. No. 21, Attach. 1 [Def. Align's Rule 7.1 Statement] *with* Dkt. No. 24, Attach. 3 [Plf.'s Rule 7.1 Response] *and* Dkt. No. 28, Attach. 2 [Def. Align's Rule 7.1 Reply].)

appliances–called "Invisalign"–was made available to dentists for former patients of Defendant OrthoClear, at no charge to the dentists or patients.  On October 30, 2006, Plaintiff's orthodontist registered Plaintiff's case under the Patients First Program.  On January 17, 2007, Defendant Align received the materials from Plaintiff's orthodontist as required for her treatment under the Patient's First Program.  All of the aligners necessary to complete Plaintiff's treatment were shipped to her orthodontist on May 7, 2007, and were received by Plaintiff on or about May 14, 2007.  Defendant Align has not sought or received any funds from Plaintiff for her Invisalign treatment.

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement, Rule 7.1 Response, and Rule 7.1 Reply is assumed in this Decision and Order, which (again) is intended primarily for review by the parties.

### C.    Defendant Align's Motion for Partial Summary Judgment

Generally, in support of its motion for partial summary judgment, Defendant Align argues as follows: (1) the Settlement Agreement entered into between Defendant Align and Defendant OrthoClear unambiguously provides only that Defendant Align promised to make treatment available at no charge to Defendant OrthoClear's customers existing as of September 27, 2006; and (2) because it did in fact make treatment available at no charge to those customers–including Plaintiff–Defendant Align is not liable for breach of third-party contract. (*See generally* Dkt. No. 21, Attach. 13 [Def. Align's Memo. of Law].)

In response to Defendant Align's motion for partial summary judgment, Plaintiff argues as follows: (1) Defendant Align failed to fulfill its obligation to provide Plaintiff "treatment"

4

under the terms of the Settlement Agreement; and (2) she is entitled to conduct discovery before summary judgment is granted against her with regard to her causes of action against Defendant Ailgn.  (*See generally* Dkt. No. 24 [Plf.'s Reply Memo. of Law].)

In its reply, Defendant Align argues as follows: (1) in opposing Defendant Align's motion for partial summary judgment, Plaintiff is attempting to re-write Defendants' Settlement Agreement, which is unambiguous; (2) Plaintiff's expert's explanation of industry "standards" does not apply to Defendant Align, or to Plaintiff's case; (3) Defendant Align made Invisalign Treatment available in a manner consistent with Plaintiff's expert's definition of "treatment"; (4) Plaintiff cannot rely on extrinsic evidence to alter the terms of the Settlement Agreement; and (5) affording Plaintiff the opportunity to conduct discovery in this action is unnecessary, because Plaintiff's case would not be aided by discovery.  (*See generally* Dkt. No. 28, Attach. 3 [Def. Align's Reply Memo. of Law].)

**D.     Defendant OrthoClear's Motion to Dismiss for Failure to State a Claim**

Generally, in support of its motion to dismiss for failure to state a claim, Defendant OrthoClear argues as follows: (1) the Amended Complaint against Defendant OrthoClear fails to state a claim upon which relief may be granted for breach of contract because Plaintiff does not and cannot allege compensable damages; and (2) the Amended Complaint against Defendant OrthoClear must be dismissed because Plaintiff lacks standing as a creditor to pursue her two fraudulent-conveyance claims.  (*See generally* Dkt. No. 55, Attach. 1 [Def. OrthoClear's Memo. of Law].)

In response to Defendant OrthoClear's motion to dismiss for failure to state a claim, Plaintiff argues as follows: (1) the Amended Complaint states a claim for relief because, *inter*

*alia*, it alleges that Defendant OrthoClear "contracted to do something, failed to do it, and that Plaintiff and the putative class members . . . were damaged as a result";[3] and (2) Defendant OrthoClear's motion to dismiss Plaintiff's fraudulent conveyances claims must be denied.  (*See generally* Dkt. No. 56 [Plf.'s Response Memo. of Law].)

In its reply, Defendant OrthoClear generally repeats its arguments made in its initial memorandum of law.  (*See generally* Dkt. No. 58 [Def. OrthoClear's Reply Memo. of Law].)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that  well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B.    Legal Standard Governing Motions to Dismiss for Failure to State a Claim

For the sake of brevity, the Court will not recite, in this Decision and Order, the well-known legal standard governing dismissals for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), but will direct the reader to the Court's recent decision in *Wade v. Tiffin Motorhomes, Inc.*, 05-CV-1458, 2009 WL 3629674, at *3-5 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.).

---

[3]    In addition, Plaintiff clarifies that she is not seeking compensation for pain and suffering.

### C.      Legal Standards Governing Plaintiff's Claims

Again, because the parties to this action have demonstrated, in their memoranda of law,

an accurate understanding of the relevant points of law contained in the legal standards

governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal

standards in this Decision and Order, which (again) is intended primarily for review by the

parties, but will instead recite relevant legal standards in its analysis only when necessary.  (*See*

Dkt. No. 21, Attach.13 [Def. Align's Memo. of Law]; Dkt. No. 24 [Plf.'s Response Memo. of

Law]; Dkt. No. 28, Attach. 3 [Def. Align's Reply Memo. of Law]; Dkt. No. 55, Attach. 1 [Def.

OrthoClear's Memo. of Law]; Dkt. No. 56 [Plf.'s Response Memo. of Law]; Dkt. No. 58 [Def.

OrthoClear's Reply Memo. of Law].)

## III.    ANALYSIS

### A.      Plaintiff's Motion for Class Certification

In its motion for class certification, Plaintiffs asks the Court to certify a class under Fed.

R. Civ. P. 23(b)(3), to be defined as "[a]ll orthodontic patients in the United States (or their

parents and/or natural guardians, if not of the age of majority) whose course of orthodontic

treatment using the OrthoClear system was interrupted, prolonged or terminated because

OrthoClear ceased operations in compliance with its [S]ettlement [A]greement with Align on or

about September 27, 2006."  (Dkt. No. 26, Attach. 6, at 11-12.)

The standards for determining a motion for class certification are well settled.  "For a

court to certify a class under Rule 23(b)(3), it must conclude that the prerequisites to class action

status as set forth in Rule 23(a) are met, as well as the standards specific to Rule 23(b)(3)

classes."  *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 226 F.R.D. 446, 449 (S.D.N.Y.

2005).  With regard to the prerequisites set forth in Fed. R. Civ. P. 23(a), the court must reach

the following conclusions: "(1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class."  Fed. R.

Civ. P. 23(a).  In addition, with regard to the prerequisites set forth in Fed. R. Civ. P. 23(b)(3),

the Court must also reach the following conclusions: "(1) the questions of law or fact common to

the members of the class predominate over any questions affecting only individual members; and

(2) a class action is superior to other available methods for the fair and efficient adjudication of

the controversy."  Fed. R. Civ. P. 23(b).

Regardless of whether the plaintiff brings the motion to certify the class, or the defendant

files a motion to deny class certification, Plaintiffs have the burden of proving that each of the

required elements for class certification under Fed. R. Civ. P. 23 has been satisfied.  *Spagnola v.*

*Chubb Corp.*, 06-CV-9960, 2010 WL 46017, at *11 (S.D.N.Y. Jan. 7, 2010) (citations omitted).

### 1.      Requirements of Fed. R. Civ. P. 23(a)

#### a.      Numerosity

As an initial matter, there is no question that the class is so numerous that joinder of all

members is impracticable.  Defendants do not dispute Plaintiff's assertion that Defendant

OrthoClear had approximately 33,100 patients when Defendant OrthoClear and Defendant Align

entered into their Settlement Agreement.  Therefore, numerosity as required by Fed. R. Civ. P.

23(a)(1) is satisfied.

b.      **Commonality and Typicality**

"The commonality requirement is satisfied if plaintiffs' complaints share a common question of law or fact." *Weiss*, 226 F.R.D. at 449 (citing Fed. R. Civ. P. 23[a][2]). "It is not necessary that all of the questions raised by arguments are identical; it is sufficient if a single common issue is shared by the class." *Id.* (citing, *inter alia*, *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 [2d Cir. 2001]). In other words, "Rule 23(a)(2) does not require the plaintiffs to demonstrate that the class members' claims are identical; rather, it demands that the disputed issue of law or fact 'occup[ies] essentially the same degree of centrality to the named plaintiffs' claim as to that of the other members of the proposed class.'" *Dodge v. County of Orange*, 208 F.R.D. 79, 88 (S.D.N.Y. 2002) (quoting *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 442 [S.D.N.Y. 1995]).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied "if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997).

It is important to recognize that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "The crux of both requirements is to ensure that the maintenance of a class action is economical, and that the named plaintiffs' claims and the class claims are so inter-related that the interest of the class members will be fairly and adequately protected in their absence." *Weiss*, 226 F.R.D. at 450 n.3 (citing *Pyke v. Cuomo*, 209 F.R.D. 33, 41 [N.D.N.Y. 2002] [McCurn, J.]).

Here, Plaintiff alleges, *inter alia*, that Defendant OrthoClear breached the contract that it entered into with "Plaintiff and each of the Class Members" when it ceased "manufacture and production" of its appliances, causing Plaintiff and each of the proposed Class Members to suffer "a material interruption or cessation of their treatment before completion, resulting in damage[s] . . . ." (Dkt. No. 46, at ¶ 90.)  Under the circumstances, there appears to be at least one common question of law or fact on all the breach of contract claims, namely, that Plaintiff and the proposed Class Members all had identical, or virtually identical, contracts with Defendant OrthoClear.  Moreover, it appears that the claims of Plaintiff arise from the same practice or course of conduct that gives rise to the claims of the proposed class members.  However, the Court is not sufficiently certain of these facts to grant Plaintiff's motion.  This is because the parties have not produced the contract or contracts that Defendant OrthoClear entered into with Plaintiff and the proposed Class Members; and therefore the Court is unable to determine whether each contract is the same (or virtually the same), or whether each contract is even governed by the same (or effectively the same) law.

In addition, even assuming that each contract is the same, and governed by the same law, the remaining elements of a valid breach-of-contract claim do not necessarily involve common questions of law or fact (especially fact).[4]  For example, each class member must prove that he or she has, in all respects, complied with his or her obligations under the contract.[5]  Furthermore,

---

[4]     In New York, "[t]o prove breach of contract, [a] plaintiff[] must prove [the following]: (1) a contract existed between the parties; (2) plaintiff[] ha[s] in all respects complied with [his] obligations; (3) defendant's alleged failure constitutes a failure to perform its obligations under the contract; and (4) plaintiff[] ha[s] been damaged as a result of the defendant's actions."  *Weiss*, 226 F.R.D. at 450.

[5]     In a situation where a class member experienced delay because of his or her failure to attend a scheduled appointment, or timely change the removable appliance, or in a

each class member must demonstrate the manner in which Defendant OrthoClear allegedly failed to live up to its obligations.[6]  Finally, each class member must demonstrate that he or she has been damaged, and this issue is also highly individualized.[7]

For all these reasons, the second prerequisite set forth in Fed. R. Civ. P. 23(a)(1)–that there are questions of law or fact common to the class–does not *appear* to be satisfied *based on the current record*.  Similarly, the third prerequisite set forth in Fed. R. Civ. P. 23(a)(1)–that the claims or defenses of the representative parties are typical of the claims or defenses of the class–also does not *appear* to be satisfied *based on the current record*.

### c.      Adequacy

In determining if a proposed representative will adequately serve the interests of the class, courts examine the following: "(1) [whether] plaintiff's interests are antagonistic to the interests of other members of the class; and (2) [whether] plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Sec.*

---

situation where a class member failed to timely pay his or her outstanding bill, that class member may be deemed to have failed to comply with his or her obligations under the contract.

[6]      Certainly, some class members will have a more difficult time establishing this than others.  For example, in the following three circumstances, a class member will have a relatively difficult time establishing that Defendant OrthoClear failed to live up to its obligations: (1) when the class member experienced no delay in treatment as a result of the settlement between Defendant OrthoClear and Defendant Align; (2) when the class member had already decided to no longer continue Defendant OrthoClear's treatment before the settlement was executed; or (3) when the class member caused or contributed to the delay in treatment.

[7]      The Court notes that it is unable to conclude that Plaintiff's claims or defenses are typical of the claims or defenses of the class, because the Court has no way of knowing, *inter alia*, what percentage of the class (1) experienced no delay as a result of the settlement, (2) decided to no longer pursue Defendant OrthoClear treatment prior to the settlement, (3) failed to live up to its obligations, and/or (4) caused or contributed to the delay in treatment that he or she experienced.

*Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).  Here, although it is unclear whether Plaintiff's claims are

typical of the class, it appears that Plaintiff's interests are consistent with the claims of the

proposed class, because she is seeking damages for breach of contract, which resulted in

treatment that was interrupted, prolonged, or terminated.  Further, Hancock & Estabrook, the

proposed class counsel, is experienced in complex civil litigation, and has manifested a

willingness to devote necessary resources to litigate vigorously on behalf of the entire class.

For these reasons, the adequacy prerequisite set forth in Fed. R. Civ. P. 23(a)(1) has

been satisfied.

### 2.      Requirements of Fed. R. Civ. P. 23(b)

#### a.      Whether Questions of Law or Fact Common to the Members of the Class Predominate Over Any Questions Affecting Only Individual Members

"In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must

establish that the issues in the class action that are subject to generalized proof, thus applicable to

the class as a whole, . . . predominate over those issues that are subject only to individualized

proof."  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  "The predominance

requirement is similar, but 'more stringent' and 'far more demanding' than the commonality

requirement of Rule 23(a)."  *Weiss*, 226 F.R.D. at 450 (citing *Amchem Prod., Inc.*, 521 U.S.  at

609).  "Courts frequently have found that the requirement was not met where, notwithstanding

the presence of common legal and factual issues that satisfy the commonality requirement, the

resolution of individual claims for relief would require individualized inquiries."  *Id.* at 451-52

(collecting cases); *see also Yeger v. E\*Trade Sec. LLC*, 884 N.Y.S.2d 21, 24 (N.Y. App. Div. 2d

Dept. 2009) (applying N.Y. C.P.L.R. § 901(a)–New York's analog to Fed. R. Civ. P. 23–and

denying class certification in case alleging that defendant on-line trading brokerage firm breached customer agreement by assessing account maintenance fees one day early because, without proof that each member of class would have taken steps to avoid fee had collection occurred at its proper time, a windfall would have resulted to those plaintiffs who would not have taken corrective action, and  accordingly, individualized issues, rather than common ones, predominated).

"Because Rule 23(b)(3) requires that common issues predominate, courts deny certification where individualized issues of fact abound."  *Id*. at 452 (citing *Moore v. PaineWebber, Inc*., 306 F.3d 1247, 1255-56 [2d Cir. 2002] [denying motion for class certification because defendant's liability for fraud required individualized proof of statements made to class members and therefore individual issues predominated over issues common to the putative class]).  Having said that, it is also true that "[t]he predominance inquiry should focus on the liability issue–'if the liability issue is common to the class, common questions are held to predominate over individual questions.'"  *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 304 (E.D.N.Y. 2006) (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp*., 89 F.R.D. 87, 93 [S.D.N.Y. 1981]).

At this stage of the proceeding, the Court is unable to determine whether common questions predominate over individual questions.  Granted, one common question appears to be the manner in which the contract or contracts were breached.  Another common question may arise from a similarity in the governing law.  However, because the Court has not had an opportunity to review the contract or contracts between Defendant OrthoClear and its patients, the Court cannot make these determinations with sufficient certainty.  Moreover, other individual

questions appear to exist.  For example, each plaintiff will be required to make a different factual

showing to demonstrate the extent of his or her injuries suffered.  Furthermore, the individual

defenses that Defendant OrthoClear may assert against the plaintiffs in the class could vary.

Finally, whether the contract was breached with regard to a particular plaintiff may depend, at

least in part, on the actions (or inactions) of that particular plaintiff.

 For all these reasons, the first prerequisite set forth in Fed. R. Civ. P. 23(b) has not been

satisfied.

### b.   Whether a Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy

 In deciding whether a class action is superior to other methods of adjudication, a court

may look to the following factors: "(1) the interest of the class members in individually

controlling the prosecution or defense of separate actions; (2) the extent and nature of any

litigation already commenced by or against class members; (3) the desirability of concentrating

the litigation of the claims in a particular forum; and (4) difficulties likely to be encountered in

the management of a class action."  *Spagnola*, 2010 WL 46017, at *19 (citing Fed. R. Civ. P.

23[b][3]).  "In particular, courts have found that class treatment is appropriate in 'negative value

cases,' where the individual interest of each class member's interest in the litigation is less than

the cost to maintain an individual action."  *Spagnola*,  2010 WL 46017, at *19 (citations

omitted).  "However, the greater the number of individual issues, the less likely that superiority

can be established."  *Id*. (internal quotation marks and citation omitted).

 Here, as noted above in Part III.A.1.b. of this Decision and Order, it is unclear whether

certification of the class will require (1) mini-trials on the resolution of each class member's

claims, or (2) the applicability of different affirmative defenses to different plaintiffs.   In the event that class certification will result in these issues, certification would "detract[] from the superiority of the class action device, to say the least." *Id*.

For all of these reasons, the Court is unable to conclude, at this stage of the proceedings, that the second prerequisite set forth in Fed. R. Civ. P. 23(b) has been satisfied.  As a result, Plaintiff's motion to certify the class is denied without prejudice and with leave to renew upon the completion of further discovery regarding the issue of certification.  The Court does this in an effort to efficiently resolve many of the issues identified above, including (1) the size of the proposed class who suffered an actual economic loss as a result of the settlement reached between Defendant Align and Defendant OrthoClear, (2) whether each contract is governed by the same law, (3) whether there are any potential class members who failed to comply with his or her obligations under the contract, (4) whether, and to what extent, there is any commonality amongst all of the proposed class members regarding damages, (5) whether choice of law is a common question, (6) whether the liability issue is common to the class, (7) whether mini-trials will be required to resolve some portion of each class member's claims, and (8) whether, and to what extent, affirmative defenses will vary among plaintiffs.

### B.   Defendant Align's Motion for Partial Summary Judgment

As stated above in Part I.C. of this Decision and Order, Defendant Align seeks the dismissal of this claim because the Settlement Agreement entered into between Defendant Align and Defendant OrthoClear unambiguously provides only that Defendant Align promised to make treatment available to Defendant OrthoClear's customers at no charge; and Defendant Align subsequently made that treatment available at no charge.

As an initial matter, the Court finds that Plaintiff is an intentional third-party beneficiary of the Settlement Agreement.  Therefore, Plaintiff may assert a claim of breach of contract arising out of the Settlement Agreement.[8]  Having said that, after carefully considering the relevant language of the Settlement Agreement, the Court accepts Defendant Align's argument that it is unambiguous, and requires only that Defendant Align make treatment available at no charge to Defendant OrthoClear's customers.  More specifically, the Settlement Agreement states, in relevant part, as follows:

> (b) OrthoClear has delivered to Align and Align acknowledges receipt of patient case numbers and dentist contact information for the purposes of facilitating the transfer of patient cases to Align, which information Align shall maintain in accordance with the same privacy protections as it does its own customer and patient information.

> (c) Following the Closing [of the settlement agreement], Align will make *treatment* using removable dental aligners available for all OrthoClear patient cases existing as of September 27, 2006 in the United States, Canada, and Hong Kong, at no charge from Align to the patient, the doctor, or OrthoClear.

(Dkt. No. 21, Attach. 12, at 6 [emphasis added].)

Plaintiff argues that Defendant Align's "handling" of Plaintiff and the proposed class members "cannot be considered 'treatment' within the plain and unambiguous meaning of that term."  (Dkt. No. 24, at 13.)  In support of Plaintiff's argument, Plaintiff offers the declaration of a professor from the New York University School of Dentistry, who is familiar with Defendant

---

[8]      "The concept of allowing a third party to enforce an agreement made by others stems from the notion that it is just and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty it is to pay or perform."  *Mademoiselle Knitwear, Inc. v. Liz Claiborne, Inc*., 98-CV-3252, 1999 WL 377853, at *9 (S.D.N.Y. June 9, 1999) (internal quotation marks and citations omitted).  "A third party may recover as a beneficiary of a contract between others only if the litigant is an intended beneficiary of that agreement."  *Mademoiselle Knitwear, Inc*., 1999 WL 377853, at *9 (citation omitted).

Align's aligners, who states that "[u]nder normal standards of dental practice, providing patients their aligners in anything other than a prompt, timely and continuous fashion, cannot be considered 'treatment.'" (Dkt. No. 24, Attach. 15, at ¶ 8.)  Dr. Ray further states that a provider's handling of a malocclusion patient is deemed abandonment unless he or she provides progressive removable clear aligners from when a patient begins using them until the treatment's completion. (Dkt. No. 24, Attach. 15, at ¶¶ 8, 9.)

After carefully considering the matter, the Court rejects Plaintiff's argument that Defendant Align breached its duty to Plaintiff by failing to provide her "treatment" that was prompt, timely and continuous.  The Court reaches this conclusion for four reasons.

First, Plaintiff and the proposed class members were patients of Defendant OrthoClear (with which it had a contract), not Defendant Align.[9]  As a result, Defendant Align did not have a contractual duty to provide Plaintiff and the proposed class members with a type of "treatment" other than the treatment required by the Settlement Agreement.  Second, the express terms of the Settlement Agreement say nothing of the treatment having to be provided in a prompt, timely and continuous fashion.  Third, because Defendant Align is a manufacturer of a dental product, and is not a dental office, whatever industry standard governs dentists in the provision of "treatment" does not apply to Defendant Align.  Fourth, because Plaintiff and the proposed class members were not Defendant Align's patients, Defendant Align needed to acquire information about each of them before it could render treatment to them.  Because the acquisition of this information was largely outside of Defendant Align's control, it would be unreasonable to interpret the term "treatment" as treatment that was prompt, timely and continuous.

---

[9]      The Court notes that the Settlement Agreement refers to Plaintiff and the proposed class members as "OrthoClear's patients."

Having concluded that the term "treatment," as it is written in the Settlement Agreement, does not contain the requirements of promptness, timeliness and continuity, the Court must examine whether Plaintiff and the proposed class members received the benefit of what Defendant OrthoClear bargained for them.  *Regent Ins. Co. v. Storm King Contracting, Inc.*, 06-CV-2879, 2008 WL 563465, at \*11-12 (S.D.N.Y. Feb. 27, 2008) (noting that a third-party beneficiary of a contract is entitled to receive the benefit of what parties to the contract bargained for).  Because there is no factual allegation in Plaintiff's Amended Complaint plausibly suggesting that Defendant Align failed to make treatment available at no charge to Defendant OrthoClear's former patients, and the record currently before the Court establishes that Defendant Align did in fact provide treatment to Plaintiff and the proposed class members within the time period that it agreed to provide treatment under the Patients First Program, the Court concludes that Plaintiff and the proposed class members received the benefit of what Defendant OrthoClear bargained for under the Settlement Agreement.

For these reasons, Plaintiff's breach-of-contract claim against Defendant Align is dismissed.

### D.      Defendant OrthoClear's Motion to Dismiss for Failure to State a Claim

As stated above in Part I.E. of this Decision and Order, Defendant OrthoClear seeks the dismissal of Plaintiff's two breach-of-contract claims and her two fraudulent conveyance claims for two reasons: (1) the Amended Complaint against Defendant OrthoClear fails to state a claim upon which relief may be granted for breach of contract because Plaintiff does not and cannot allege compensable damages; and (2) the Amended Complaint against Defendant OrthoClear must be dismissed because Plaintiff lacks standing as a creditor to pursue her fraudulent

conveyance claims.

### 1.      Lack of Damages

Based on a liberal construction of Plaintiff's Amended Complaint, the Court rejects

Defendant OrthoClear's argument that Plaintiff has failed to plead facts plausibly suggesting that

she suffered compensable damages.[10]  "The plaintiff is not 'obliged to show, at th[e pleading]

stage of the [action], that [it] actually sustained damages . . . .'"  *In re Grumman Olson Indus.,*

*Inc.*, 329 B.R. 411, 432 (Bankr. S.D.N.Y. 2005) (citation omitted).  Instead, a plaintiff "need

only plead allegations from which damages attributable to the defendant's conduct might be

reasonably inferred."  *In re Grumman Olson Indus., Inc*., 329 B.R. at 432 (internal quotation

marks and citation omitted).

Here, Plaintiff alleges that, "[p]rior to September 27, 2006, Plaintiff and each of the

[proposed] Class Members, through his or her orthodontist or dentist acting as agent, entered into

a contract with OrthoClear pursuant to which, OrthoClear agreed to design, manufacture, and

timely deliver the OrthoClear Appliances necessary to complete each named Plaintiffs' and

[proposed] Class Members' orthodontic treatment."  (Dkt. No. 46, at ¶ 89.)  However, "[b]y

reason of OrthoClear's cessation of manufacture and production of the OrthoClear Appliances,

each of the named Plaintiffs and [proposed] Class Members have suffered a material interruption

or cessation of their treatment before completion, resulting in damage to Plaintiff and each of the

Class Members."  (Dkt. No. 46, at ¶¶ 90, 95.)

Here, as did the Southern District of New York in *USAirways Group, Inc. v. British*

*Airways PLC*, the Court recognizes that Plaintiff "may ultimately have difficulty establishing the

---

[10]      The Court notes that all complaints must be liberally construed.  *See* Fed. R. Civ.
P. 8(e).

amount of damages caused by the alleged breach."  *USAirways Group, Inc. v. British Airways PLC*, 989 F. Supp. 482, 492 (S.D.N.Y. 1997).  However, the allegation is sufficient to survive a motion to dismiss because it puts Defendant OrthoClear on fair notice of an alleged injury–a material interruption or cessation of their treatment before completion–and it alleges that this injury was caused by Defendant OrthoClear's failure to timely provide contractually agreed upon services.[11]

For these reasons, Plaintiff's two breach-of-contract claims against Defendant OrthoClear survive Defendant OrthoClear's motion to dismiss for failure to state a claim upon which relief may be granted.

## 2.    Lack of Standing

As stated above in Part I.E. of this Decision and Order, Defendant OrthoClear seeks the dismissal of this Plaintiff's two fraudulent-conveyance claims because Plaintiff lacks standing as a creditor to pursue this claim, and because her Amended Complaint fails to state a claim upon

---

[11]      *See In re Food Mgmt. Group, LLC*, 380 B.R. 677, 700 (Bankr. S.D.N.Y. 2008) ("On a Rule 12(b)(6) motion, the Court need only address whether the facts alleged in the complaint demonstrate any damages to the estate. Plaintiff need not plead a concrete amount of damages to survive a motion to dismiss."); *Robi, Ltd. v. Proksch*, 99-CV-1924, 2000 WL 191684, at *2 (S.D.N.Y. Feb. 10, 2000) (finding that, although plaintiff's amended complaint failed to allege an exact damage amount that plaintiff was seeking, plaintiff's allegations that defendant "failed to supply eyewear to [him], in violation of the Agreement, and that [he] suffered lost profits as a consequence . . . [were] sufficient to satisfy the liberal pleading requirements of the Federal Rules of Civil Procedure"); *USAirways Group, Inc. v. British Airways PLC*, 989 F. Supp. 482, 492 (S.D.N.Y. 1997) ("The complaint alleges that USAir suffered damages of 'substantial out-of-pocket expenses incurred by USAir in pursuing and implementing the BA/USAir Alliance, and foregoing opportunities to mitigate British Airways' breach of contract by, among other things, seeking approval for alternative route authority between the U.S. and U.K. and terminating those commercial agreements with BA that are unfavorable to USAir, such as the Code Share and Frequent Traveler Agreements.' Although the allegations of damages are short on specifics and USAir may ultimately have difficulty establishing the amount of damages caused by the alleged breach, such allegations are sufficient to survive a motion to dismiss the complaint.").

which relief may be granted.  Based on the current record, the Court rejects Defendant
OrthoClear's arguments.

In its reply memorandum of law in further support of its motion to dismiss the Amended
Complaint, Defendant OrthoClear notes that "[an individual] with a contingent claim is a
creditor within the meaning of New York's Debtor and Creditor Law."  (Dkt. No. 58, at 9.)
Defendant OrthoClear further notes that Plaintiff's two breach-of-contract claims against
Defendant OrthoClear constitute "contingent claims."  (*Id.*)  The Court agrees.

Because the Court previously decided, in Part III.D. of this Decision and Order, that
Plaintiff's two breach-of-contract claims against Defendant OrthoClear survive Defendant
OrthoClear's motion to dismiss, Plaintiff has a contingent claim against Defendant OrthoClear,
which afford her creditor status and allow her to assert her two claims of fraudulent conveyance.
*See Sunrise Indus. Joint Venture v. Ditric Optics, Inc.*, 873 F. Supp. 765, 771-72 (E.D.N.Y.
1995); *Hassett v. Goetzmann*, 217 B.R. 9, 16-17 (N.D.N.Y. 1998) (McCurn. J.).

For these reasons, Plaintiff's two fraudulent conveyance claims survive Defendant
OrthoClear's motion to dismiss for failure to state a claim upon which relief may be granted.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to certify the class (Dkt No. 26) is **<u>DENIED</u>**  without
prejudice and with leave to renew upon the completion of further discovery, described above;
when renewing this motion, Plaintiff may, if she so chooses, incorporate by reference any or all
of the papers currently contained in Docket No. 26; and it is further

**ORDERED** that Defendant Align's motion for partial summary judgment (Dkt. No. 21)
is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant Align is **<u>DISMISSED</u>** from the action; and it is further

**ORDERED** that Defendant OrthoClear's motion to dismiss for failure to state a claim upon which relief may be granted (Dkt. No. 55) is **DENIED**; and it is further

**ORDERED** that counsel are directed to appear on JULY 26, 2010, at 2:00 p.m. in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, a scheduling order will be issued at that time; Plaintiff is further directed to forward a written settlement demand to Defendants no later than JULY 12, 2010, and the parties are directed to engage in meaningful settlement negotiations prior to the JULY 26, 2010 conference.

Dated: June 2, 2010
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge